NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY DEAN MCNABB, JR., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No.: 21-10207 <br><br> OPINION |

**CECCHI, District Judge.**

I. **INTRODUCTION**

Before the Court is the appeal of Larry Dean McNabb, Jr. ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

II. **BACKGROUND**

Plaintiff is a 55-year-old male with the equivalent of a high school education, living in Franklin, New Jersey. Tr.[1] at 29, 283, 285. He was last employed in approximately 2017, *id.* at 226, and has worked as a packer, delivery driver, compounder, and filtration operator, *id.* at 29.

Plaintiff testified that he could not work due to weakness and joint pain in the shoulders, hips, back, and neck. *Id.* at 68-70. Plaintiff also has mental impairments generally characterized as anxiety or depression. Despite his conditions, Plaintiff reported that he cares for himself, prepares

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 7.

simple meals, drives, and occasionally socializes, including attending the Thanksgiving Day parade in New York City with his girlfriend in 2018. Tr. at 24, 295-98, 717.

On March 28, 2018, Plaintiff filed an application for DIB, alleging disability beginning on April 12, 2017 due to anxiety disorder, depression, and a back problem. *Id.* at 20, 230. Plaintiff's claim for DIB was denied initially on June 8, 2018. *Id.* at 20. Plaintiff requested and was granted a hearing before an ALJ held in August 2019. *Id.* Additionally, there was a supplemental hearing in March 2020 by telephone, at which Plaintiff and an impartial vocational expert testified. *Id.*

On April 2, 2020, the ALJ determined that Plaintiff was not disabled at any time from April 12, 2017, the alleged onset date, through the date of the decision, and denied his request for benefits. *Id.* at 21. On February 22, 2021, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision. This appeal followed. ECF No. 1.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility

of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B.     Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

### IV. <u>DISCUSSION</u>

### A. Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from April 12, 2017 the alleged onset date, through the date of the ALJ's decision. Tr. at 22. At step two, the ALJ found Plaintiff had the following severe impairments: mild degenerative disc disease of the lumbar spine, shoulder osteoarthritis, and a mental impairment generally characterized as anxiety or depression. *Id*. at 23. At this step, the ALJ also noted that there was evidence of leg swelling and hip degenerative joint disease, though both were non-severe impairments, as "[t]he record did not evidence" that these impairments "impos[ed] more than minimal limitations on the claimant's ability to perform basic work activities for 12 continuous months." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. *Id.* Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 24–29. Based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to perform "light work" with certain limitations. *Id.* at 24. Specifically, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform all postural activities occasionally. [Plaintiff] can understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; and handle simple, repetitive work-related stress in that [Plaintiff] can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require [Plaintiff] to supervise or manage the work of others.

*Id.*

At step four, the ALJ determined Plaintiff could no longer perform his past relevant work as a packer, delivery driver, compounder, and filtration operator based on the vocational expert's

testimony. *Id.* at 29. At step five, based on Plaintiff's background, work experience, RFC, and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform a significant number of unskilled jobs existing in the national economy. *Id.* at 30. Accordingly, the ALJ found Plaintiff not disabled and denied Plaintiff's application for DIB. *Id*. at 31.

      **B.**      **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff offers three principal arguments. First, Plaintiff asserts that the ALJ erred by failing to properly evaluate the medical opinion evidence. ECF No. 14 ("Pl. Br.") at 14-25. Second, Plaintiff argues that the ALJ's determination at step two that Plaintiff's hip impairment was not severe applied the wrong standard and was not supported by substantial evidence. *Id.* at 25-29. Third, Plaintiff challenges the ALJ's formulation of the RFC, asserting that the ALJ failed to confer limitations corresponding to Plaintiff's shoulder arthritis. *Id.* at 29-31. For the reasons discussed below, the Court finds these arguments lack merit and the ALJ's decision should be affirmed.

        **1.**      **Opinion Evidence**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence. Pl. Br. at 14-25. Specifically, Plaintiff contends the ALJ did not adequately evaluate the medical opinions of Dr. Jenouri and Dr. Kinoshita with respect to Plaintiff's physical impairments, and the opinion of LCSW Riley with respect to his mental impairments. The Court addresses each in turn.

When analyzing a medical opinion, the SSA regulations provide a framework for the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability (*i.e.*, whether the medical opinion is supported by objective medical evidence); (2) consistency (*i.e.*, whether the medical opinion is consistent with other medical and nonmedical sources in the

record); (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also David K.*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* The ALJ may—but is not required to—explain how she considered the remaining factors. *Id.*

Turning to the medical opinions concerning physical impairments, the ALJ ultimately found both Dr. Jenouri and Dr. Kinoshita unpersuasive. Tr. at 26, 27. As to Dr. Jenouri's opinion, the ALJ discussed both supportability and consistency, noting that the opinion was "generally supported by his examination findings," but not "entirely consistent with other evidence of record." *Id.* at 26; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In particular, the ALJ found that Dr. Jenouri's opinion was not consistent with "claimant's activities, the limited positive objective medical evidence, and the claimant's treatment history." *Id.* Those activities included attending the 2018 Thanksgiving Day parade in New York City, which "involve[d] standing for hours and walking long distances"—in contrast to Dr. Jenouri's opinion of "moderate restriction walking and standing long periods." *Id.* at 26. The ALJ also found that although Plaintiff's April 2018 consultative examination with Dr. Jenouri showed "some positive clinical findings" including "decreased range of motion, positive straight-leg raising tests, and tenderness to palpation," those

7

findings were not present in subsequent August 2018 and January 2020 examinations. *Id.* (explaining that in August 2018 Plaintiff "exhibited intact sensation to light touch, 5/5 strength in all motor groups of the extremities, negative straight-leg raising test, and minimal paravertebral tenderness" and in January 2020 had "a strong normal stride/step"). Plaintiff's contention that the ALJ "provided only boilerplate language" thus lacks merit. The ALJ properly considered the persuasiveness of Dr. Jenouri's opinion by weighing its limited support against the inconsistencies with the record. *See* C.F.R. § 404.1520(c)(1)–(2); *see also Costello v. Comm'r of Soc. Sec.*, 2022 WL 807382, at *5 (D.N.J. Mar. 17, 2022).

Similarly, the ALJ's determination that Dr. Kinoshita's opinion was unpersuasive was also based on substantial evidence. Regarding supportability, the ALJ found that Dr. Kinoshita "did not provide an explanation or support" for his proposed limitations on "any activity to use upper extremity" and "prolonged standing/walking." Tr. at 26, 27 (citing Exhibits 17F and 18F); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (holding that medical reports without written explanations are "weak evidence at best"). The ALJ noted that even Dr. Kinoshita acknowledged twice in his medical opinions "that [Plaintiff] needed a functional capacity evaluation to objectively determine his physical functioning" because "he could not assess the claimant's functioning with 20-minute appointments." Tr. at 27 (citing Exs. 17F, 21F). Of course, it is "[t]he ALJ—not treating or examining physicians or State agency consultants—[who] must make … RFC determinations." *Chandler,* 667 F.3d at 361.

Further, the ALJ explained how Dr. Kinoshita's opinions and treatment notes "were not entirely consistent with the totality of the record." *Id*. Specifically, the ALJ contrasted Dr. Kinoshita's proposed limitations with his own negative clinical findings. *Id.*; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Although the ALJ acknowledged that in prior treatment notes Plaintiff

8

had showed "decreased strength, tenderness, and reduced range of motion," the ALJ pointed out that by January 10, 2020, Dr. Kinoshita's treatment note "did not document any positive clinical findings" and explained that Plaintiff's "pain seemed to be under control on medicinal Marijuana." Tr. at 26 (citing Ex. 16F), Tr. at 27.[2] Therefore, the ALJ properly determined that in addition to lacking supportability, Dr. Kinoshita's findings were inconsistent with the record overall. *Id.; see also id.* at 25-26 (detailing Plaintiff's activities such as attending Thanksgiving Day parade, and discussing state reviewing physician opinions). Given the substantial evidence underlying the ALJ's findings regarding the lack of supportability and consistency of Dr. Kinoshita's opinion, Plaintiff appears not to challenge the ALJ's evaluation of the medical opinions so much as disagree with the ALJ's conclusions, which does not constitute grounds to set aside an ALJ's decision. *See Cruz*, 244 F. App'x at 479 (finding that an ALJ's decision may not be set aside merely because the Court disagrees with the ALJ's conclusion) (citation omitted). Accordingly, the ALJ's determination that Dr. Jenouri's and Dr. Kinoshita's opinions were not persuasive was supported by substantial evidence.

As to the ALJ's handling of the medical opinion concerning Plaintiff's mental impairment, the ALJ's determination that LCSW Riley's opinion was unpersuasive is also supported by substantial evidence. The ALJ found that LCSW Riley's opinion was not supported by an explanation or her limited treatment notes, and was not consistent with the totality of the record.

---

[2] To the extent Plaintiff argues the ALJ "mischaracterize[ed] the record" by failing to consider Dr. Kinoshita's treatment note assessing Plaintiff with arthralgia, *see* Pl. Br. at 18, that argument is unavailing. As explained above, the ALJ considered the treatment notes but noted their lack of consistency. *See* Tr. at 26 (citing Ex, 16F); *id.* at 27 (citing Ex. 21F); *id.* (noting inconsistency of treatment notes). Moreover, Plaintiff's reliance on *Malone v. Barnhart*, 2008 WL 4155707 (E.D. Pa. Aug. 14, 2008), to explain the alleged "mischaracterization" here is misplaced. *Malone*'s mischaracterization entailed a clear mistake whereby the ALJ erroneously attributed statements to an opining doctor, then discredited that doctor because of the content of the (incorrectly attributed) statement. *Id.* at *6. No such error occurred here.

Tr. at 29. In response, Plaintiff argues that the ALJ failed to adequately explain these conclusions. Pl. Br. at 21-22. However, as with the physical medical opinions discussed above, the ALJ adequately explained both supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ discredited the supportability of Riley's opinion because she opined on limitations that began nearly three years before she began treating Plaintiff and because her opinion was based in part on Plaintiff's subjective complaints of memory rather than objective medical evidence. Tr. at 29; *see Carolyn C. v. Kijakazi*, 2021 WL 4932785, at *10–12 (D.N.J. Oct. 22, 2021) (finding that substantial evidence supported the ALJ's decision to discount the claimant's subjective complaints). While an opinion that relies on subjective complaints "should not necessarily be undermined when the alleged impairment is of the type that by its very nature is self-reported," the ALJ added "appropriate reasons" to discount LCSW Riley's opinions, including Plaintiff's activities and his clinical history. *Hall v. Astrue,* 882 F. Supp. 2d 732, 740 (D. Del. 2012); Tr. at 28 (noting Plaintiff's consultative examinations and attendance at the Thanksgiving Day parade in NYC, which "involve[d] a large crowd of people and is loud and busy" and therefore "inconsistent with the claimant's alleged mental impairment"). Moreover, the ALJ found Riley's opinion inconsistent with her mostly negative clinical findings as to Plaintiff's mental health. *Id.* The ALJ thus properly determined LCSW Riley's opinion was unpersuasive in light of its lack of support and consistency with the totality of the record. *See* C.F.R. § 404.1520(c)(1)–(2); *see also Costello*, 2022 WL 807382, at *5.

Therefore, the ALJ properly considered the persuasiveness of the opinions of Dr. Jenouri, Dr. Kinoshita, and LCSW Riley in accordance with the applicable regulations. *See* C.F.R. § 404.1520(c)(1)–(2); *see also Costello*, 2022 WL 807382, at *5.

## 2. Findings Regarding Severity of Plaintiff's Hip Impairment

Turning to Plaintiff's assertion that the ALJ incorrectly determined at step two that Plaintiff's hip impairment was not severe, a claimant must prove that an impairment "significantly limits [his] physical or mental ability to do basic work activities" for it to be deemed "severe." 20 C.F.R. § 416.920(c). An impairment (or combination of impairments) will not be severe if the evidence establishes a "slight abnormality" with "no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 144 (3d Cir. 2007). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step two] without undertaking the vocational analysis." *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring); *see also* 20 C.F.R. §§ 4140.1520(c), 404.1522, 416.920(c), 416.922. If a claimant presents evidence of more than a slight abnormality, "the step two requirement of 'severe' is met, and the sequential evaluation process should continue." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Moreover, once step two is found in a plaintiff's favor, the ALJ should consider all impairments, whether they were determined to be severe or not, at all subsequent steps of the evaluation. *Fatima S. v. Comm'r of Soc. Sec.*, No. 20-cv-7094, 2022 WL 909674, at *8 (D.N.J. Mar. 29, 2022) (citations omitted).

In determining Plaintiff's severe impairments at step two, the ALJ recognized that "there is evidence of hip degenerative joint disease," but explicitly found that "the record did not evidence … more than minimal limitations on the claimant's ability to perform basic work activities for 12 continuous months." Tr. at 23 (citing 20 C.F.R. §§ 404.1509, 416.909). Thus, the ALJ determined that Plaintiff's hip impairment was non-severe. *Id.* As the ALJ stated she considered the entire record, in reaching this conclusion, the ALJ's finding is supported by substantial evidence. Tr. at

15; *see Fatima S.*, 2022 WL 909674, at *7 (finding an ALJ's conclusion that an impairment had no more than a minimal effect on a plaintiff's ability to perform basic work activities sufficient to support a step two finding). Plaintiff's disagreement with the ALJ's conclusions regarding his hip impairment is thus insufficient to set aside an ALJ's decision. *See Cruz*, 244 F. App'x at 479. In any event, the ALJ still found in Plaintiff's favor at step two by determining that Plaintiff had severe impairments of mild degenerative disc disease of the lumbar spine, shoulder osteoarthritis, and a mental impairment generally characterized as anxiety or depression, and appropriately proceeded with Plaintiff's sequential analysis. Tr. at 23; *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that an ALJ's step two analysis is sufficient where, in finding for Plaintiff, the ALJ determines that at least one of Plaintiff's impairments is severe).

To the extent Plaintiff argues that the ALJ erred by failing to use a "de minimis" standard at step-two, that argument also lacks merit. *See* Pl. Br. at 25-26. The ALJ correctly identified the proper standard for determining if an impairment is severe when she explained that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 21; *see Bowen*, 482 U.S. at 158 (noting that impairments which do not significantly limit any basic work activity can be denied benefits at step two). Moreover, the ALJ properly applied that standard when she found that, based upon the record, Plaintiff's hip impairment did not "impos[e] more than minimal limitations on the claimant's ability to perform basic work activities for 12 continuous months." Tr. at 23.

Plaintiff next argues that the ALJ's consideration at step two of the fact that Plaintiff had not alleged disability due to a hip impairment was not supported by substantial evidence. Pl. Br. at 27. Plaintiff primarily relies on SSR 96-8p, which states that "*[i]n assessing RFC*, the

adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Pl. Br. at 27-28 (citing SSR 96-8p) (emphasis added). However, as its language indicates, the SSR 96-8p policy interpretation cited by Plaintiff applies to the adjudicator's RFC assessment—not the step two determination of a severe impairment. In any event, the ALJ "considered all of the claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's residual functional capacity." Tr. at 23 (emphasis added); *see also* Tr. at 25 (noting claimant's alleged pain, sore joints, limited ability to lift, stand, walk, sit, climb stairs, kneel, and bend). And while Plaintiff lists his treatment history and clinical findings, Pl. Br. at 26-27, he has identified no specific medical evidence in the record demonstrating that his hip impairment impacted his ability to perform work-related activities or necessitated additional functional limitations beyond those already accounted for in the RFC. Thus, the ALJ adequately considered those impairments in conducting Plaintiff's sequential evaluation.³ Moreover, failure to claim an inability to work as a result of a specific impairment may result in a finding of not severe at step two. *See Campanaro v. Colvin*, 2014 WL 4272728 at *19 (M.D. Pa. Aug. 28, 2014) (affirming that carpal tunnel syndrome was not severe where plaintiff "did not claim he was unable to work as a result of his carpal tunnel in his initial application"). Accordingly, the ALJ's determination that Plaintiff's hip impairment was not severe was supported by substantial evidence and analyzed under the proper legal standard.

### 3. Formulation of Plaintiff's RFC

Next, Plaintiff challenges the ALJ's formulation of Plaintiff's RFC. The responsibility for

---

³ Plaintiff's reliance on *Burns v. Barnhart*, 312 F.3d 113 (3d Cir.2002), is misplaced. Pl. Br. at 29. There, the court found a hypothetical posed to the vocational expert to be deficient because it did not convey the intellectual limitations the ALJ had already adopted as severe. *See id.* at 121 (noting ALJ found claimant's "borderline intellectual functioning" to be a severe impairment). By contrast, the ALJ here found Plaintiff's hip impairment was not severe. Tr. at 23.

assessing and assigning a claimant's RFC rests solely with the ALJ, not with any particular medical source. 20 C.F.R. §§ 404.1527(d)(2)-(3); 404.1546(c); *see also Chandler,* 667 F.3d at 361. The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his determination rests." *Mays v. Barnhart*, 78 Fed. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Specifically, Plaintiff challenges the RFC by asserting that the ALJ failed to include limitations in the RFC corresponding to Plaintiff's shoulder arthritis. Pl. Br. at 29. However, the ALJ addressed Plaintiff's shoulder impairment and fully accounted for any functional limitations by restricting Plaintiff to light work with occasional postural movements. Tr. at 24.

In determining Plaintiff's RFC, the ALJ conducted a thorough review of the relevant evidence of record. *Id.* Notably, within that review the ALJ found the June 2018 opinion of a State reviewing physician to be persuasive. *Id.* at 26. The State reviewing physician opined that "the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently," and could "push and/or pull without limitation beyond that listed for lifting/carrying." *Id.* Moreover, the ALJ expressly found that "[a]lthough the claimant's shoulder impairment imposes some limitations, the evidence of record did not warrant any reaching limitations." *Id.* Further, the ALJ thoroughly walked through several years of medical records regarding Plaintiff's shoulders to establish a full picture of the medical evidence as part of her RFC determination. *Id.* at 24-26. Therefore, considering the ALJ's examination of the entirety of the record and her subsequent findings—including the persuasiveness of the State reviewing physician's opinion, the lack of persuasiveness of Dr. Jenouri's and Dr. Kinoshita's physical medical opinions (as discussed above), and the lack

of reaching limitations—the RFC's imposition of light work with occasional postural activities properly accounted for Plaintiff's shoulder arthritis. Accordingly, as required, the ALJ has "provide[d] a 'clear and satisfactory explication' of the basis on which [her] determination rests" with respect to Plaintiff's shoulder impairments. *Mays*, 78 Fed. App'x at 812.

## V. CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** August 9, 2022

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**